Filed 7/30/25  P. v. Myron CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JAMES MICHEAL MYRON,<br><br>    Defendant and Appellant. | B336374<br><br>(Los Angeles County<br>Super. Ct. No. SA029061) |

    APPEAL from a judgment of the Superior Court of Los Angeles County, Lauren Weis Birnstein, Judge.  Affirmed.

    Sharon Fleming, under appointment by the Court of Appeal, for Defendant and Appellant.

    Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Thomas C. Hsieh, Deputy Attorneys General, for Plaintiff and Respondent.

—————————————

Defendant James Michael Myron appeals from an order denying his request that the trial court dismiss a five-year Penal Code[1] section 667, subdivision (a) enhancement pursuant to section 1385, subdivision (c). He contends the court abused its discretion in denying his motion on the basis that he presently endangered public safety without considering his age or whether he would endanger public safety at the time of his release, several years in the future. He further argues the trial court failed to follow the statutory directive to assign great weight to certain mitigating factors in considering whether to dismiss the enhancement. We reject these arguments and affirm.

**FACTUAL SUMMARY AND PROCEDURAL HISTORY**

**A.  Prior Criminal History**

In 1979, Myron was convicted of a 1978 robbery and murder by strangulation of a 77-year-old female real estate agent in Georgia. He was sentenced to life in prison for the murder and a consecutive term of 20 years for the robbery. In 1990, he was released on parole. In 1992, Myron was charged with theft and sodomy, but the charges were dismissed. In 1994, he moved from Georgia to New York. In April 1997, he committed fraud, grand larceny, and forgery. In 1999 (while Myron was serving a prison sentence in California), a New York jury convicted him of these crimes, and he was sentenced to 42 months to seven years in prison.

**B.  Current Offense Giving Rise to the Sentence at Issue**

In May 1997, Myron, pretending to be an entertainment industry executive, arranged to have a female real estate agent,

---

[1] Subsequent statutory references are to the Penal Code.

Renee Aguilar, show him a home that he claimed to be interested in purchasing. At the home, Aguilar became uncomfortable and told Myron she needed to retrieve paperwork from her office. Myron followed her. While in the office, Myron showed Aguilar a handgun and what appeared to be a bomb with a timer inside a briefcase. Myron claimed (falsely) that Aguilar's husband had hired him to kill her, but that after spending time with Aguilar, he could not kill her and asked her to run away with him. He shook Aguilar by the shoulders and pointed the gun at her head. Myron held Aguilar at gunpoint for two hours. He eventually had Aguilar schedule a flight for him to San Diego and told Aguilar that she owed him approximately $50,000 for not killing her.

Approximately one week after the incident with Aguilar, Myron arranged to have a female real estate agent in Scottsdale, Arizona show him several homes, but he then failed to keep the appointment. Law enforcement arrested Myron; at the time of his arrest, Myron had a briefcase containing a pellet gun, flares wired together to resemble a bomb, a stun gun, handcuffs, and a roll of tape. (*People v. Myron* (Jan. 22, 2001, B118440) [nonpub. opn.].)

With regard to the incident involving Aguilar, a jury convicted Myron of criminal threats (§ 422; count 1), attempted extortion (§§ 520, 664; count 3), sending a false bomb (§ 148.1, subd. (d); count 4), kidnapping for ransom (§ 209, subd. (a); count 5), and false imprisonment by violence (§ 236; count 6).[2] Myron admitted his prior strike convictions, the 1978 robbery and

_____

[2] Count 2 for possession of a firearm by a felon was dismissed at the preliminary hearing.

murder.  Myron was eventually sentenced under the "Three Strikes" law (§§ 667, subds. (b)-(i), 1170.12) to a total of 56 years to life in prison as follows: two consecutive 25 years to life terms for counts 1 and 4; a concurrent sentence of 25 years to life for count 5; a one-year enhancement pursuant to section 667.5, subdivision (b); and a five-year enhancement pursuant to section 667, subdivision (a)(1).  The sentences for counts 3, 5, and 6 were stayed.  In sentencing Myron, the trial court identified the following eight aggravating factors: (1) "the crime involved violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness"; (2) "[t]he victim was particularly vulnerable"; (3) "[t]he planning, sophistication, and professionalism in which the crime was carried out indicated premeditation"; (4) "[t]he crime involved an attempted or actual taking or damage of great monetary value"; (5) Myron "took advantage of [a] position of trust or confidence in commit[ting] the offense"; (6) Myron had "engaged in a pattern of violent conduct which indicates that he [is] a serious danger to society"; (7) Myron "served prior prison terms"; (8) Myron "was on parole and his performance on parole was unsatisfactory."  (See Cal. Rules of Court, rule 4.421.)

On September 2, 2022, Myron was denied parole.  His next parole suitability hearing is scheduled for September 2032.  Myron, born in January 1952, will be 80 years old in 2032.  Myron will be 95 years old if he serves 50 years in California prison.

## C.    Petition to Recall and Resentence

On August 24, 2023, Myron filed a section 1172.75 petition for resentencing in which he requested that the trial court strike a now-invalid one-year enhancement pursuant to section 667.5,

4

subdivision (b) and resentence him. Relevant to this appeal, he argued that in resentencing him and pursuant to section 1385, subdivision (c)(2)(H), the court should also dismiss the five-year section 667, subdivision (a) serious felony enhancement based on the 1978 conviction because it occurred more than five years prior to his crimes against Aguilar.[3] The People opposed Myron's request, arguing that Myron's criminal history evidenced that he posed a grave threat to public safety.

On December 28, 2023, the trial court heard Myron's petition. It explained that it had reviewed Myron's criminal history, the petition, the People's response, the 2001 direct appeal opinion, and Myron's appellate opening brief from 1999, which included the facts of the case and cites to the trial transcript. Myron's counsel acknowledged she "d[id] not have any post-conviction mitigation" evidence to present to the court.[4] The court explained that although the murder and robbery in Georgia happened 18 years prior to the crimes against Aguilar, there were intervening crimes between the two incidents, including sodomy and theft in 1992, which constituted a parole violation. Moreover, since the time of the original murder and robbery in Georgia, Myron continued his "modus operandi of attacking lone female real estate agents," including preparing to terrorize a

---

[3] Myron also argued the trial court should dismiss his prior strikes pursuant to *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 530. The trial court denied the *Romero* motion, and Myron does not appeal this ruling.

[4] Although the court had Myron's prison records, it observed there were nothing in them to Myron's detriment or benefit and that the parties did not seek to introduce anything from those records.

woman in Arizona within a week to 10 days after his attack on Aguilar. The court observed, "I see somebody that is so devious and despicable in the sense that he preys [on] and terrorizes lone real estate women or women who are working in real estate, and he certainly didn't learn his lesson when he was convicted for that same crime on a 77-year-old woman before he engaged in the crimes that we're concerned with here." The court concluded Myron thus demonstrated a dangerousness to women in the community.

The court also heard a victim impact statement from Aguilar. Aguilar observed that Myron was sentenced to life plus 20 years in Georgia but served only 13 years of his sentence. She stated, "Upon his release, he left the state . . . and went on to commit more crimes in several other states. . . . I believe that based on his past behavior, . . . Myron is not rehabilitated and should not ever be released or resentenced in any way." She observed that after committing the crimes against her, and although law enforcement was looking for him, Myron prepared to commit similar acts against a female realtor in Arizona. Aguilar stated, "To me, that signifies that he had no remorse, no fear, and no intentions of giving up his desire to commit more premeditated crimes against women." She further observed that before the incident, she had told Myron that her husband, who was also a real estate broker, was out of town when Myron requested to view the property a second time. Aguilar noted she originally prepared her statement because Myron was eligible and up for parole when he turned 70 years old, but Myron then voluntarily absented himself from that parole board hearing. She concluded, "I just ask that the court please consider all of his past and look at the person that he is and realize that he is still a

6

viable threat to women and society at this point, even though he is 70 years of age."

The court concluded, "If I haven't already stated it . . . the court finds [Myron] to be a danger to the public safety for all of the reasons stated by [this] court and also by . . . Aguilar specifically." In resentencing Myron, the trial court struck the one-year enhancement pursuant to section 667.5, subdivision (b) and reimposed the five-year enhancement.

## DISCUSSION

### A.    Legal Principles and Standard of Review

Section 1172.75 declares that certain one-year enhancements imposed under section 667.5, subdivision (b) before January 1, 2020, are legally invalid. (§ 1172.75, subd. (a).) The statute also provides, "If the court determines that the current judgment includes an enhancement [invalidated by section 1172.75], the court shall recall the sentence and resentence the defendant" (*id.*, subd. (c)), and, in so doing, "shall apply . . . any other changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing." (*Id.*, subd. (d)(2).)

Section 1385, subdivision (c)(1) contains one such change in the law and directs that "the court shall dismiss an enhancement if it is in the furtherance of justice to do so." Section 1385, subdivision (c)(2) further directs that "[i]n exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the [statutorily enumerated] mitigating circumstances . . . are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing

7

the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety." The statute defines " '[e]ndanger public safety' " to "mean[] there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others." (*Ibid.*) The enumerated mitigating circumstances include that "[t]he application of an enhancement could result in a sentence of over 20 years" and "[t]he enhancement is based on a prior conviction that is over five years old." (*Id.*, subd. (c)(2)(C), (H).)

Recently, our Supreme Court clarified that "absent a finding that dismissal would endanger public safety, a court retains the discretion to impose or dismiss enhancements provided that it assigns significant value to the enumerated mitigating circumstances when they are present. [Citation.] In other words, if the court does not find that dismissal would endanger public safety, the presence of an enumerated mitigating circumstance will generally result in the dismissal of an enhancement unless the sentencing court finds substantial, credible evidence of countervailing factors that 'may nonetheless neutralize even the great weight of the mitigating circumstance, such that dismissal of the enhancement is not in furtherance of justice.' " (*People v. Walker* (2024) 16 Cal.5th 1024, 1029.)

We review a trial court's determination that dismissal of an enhancement would endanger public safety for an abuse of discretion. (*People v. Mendoza* (2023) 88 Cal.App.5th 287, 298.) "The abuse of discretion standard is highly deferential." (*Ibid.*) Under this standard, " ' "we ask whether the trial court's findings of fact are supported by substantial evidence, whether its rulings of law are correct, and whether its application of the law to the facts was neither arbitrary nor capricious." ' [Citations.]" (*People*

8

*v. Garcia* (2024) 101 Cal.App.5th 848, 857.) " '[A]n abuse of discretion arises if the trial court based its decision on impermissible factors . . . or on an incorrect legal standard.' [Citations.]" (*People v. Gonzalez* (2024) 103 Cal.App.5th 215, 225.)

## B. Analysis

Likening his matter to *People v. Gonzalez, supra*, 103 Cal.App.5th 215, Myron argues the trial court here abused its discretion by applying an incorrect legal standard. Specifically, Myron contends the court erroneously assessed only his current dangerousness and did not consider whether he would pose a danger to public safety at the time of his potential release. Myron argues the court should have considered his age (which, at the time of the December 2023 hearing was nearly 72 years old), the date on which he would be released under the revised sentence, and whether there would be a Board of Parole Hearings review, which would act as a safety valve.[5]

*Gonzalez* is distinguishable. In that case, the trial court believed that under section 1385, subdivision (c), it was to consider the defendant's current dangerousness. (*People v. Gonzalez, supra*, 103 Cal.App.5th at p. 223.) Defense counsel disagreed and urged the court to conduct a forward-looking evaluation, considering the defendant's dangerousness when he

---

[5] Myron also argues that if we determine he forfeited his argument pursuant to *Gonzalez* by failing to raise it below, this court should find his counsel provided ineffective assistance so as to consider the merits. Because we consider Myron's argument on the merits, we need not consider his ineffective assistance arguments.

9

was to be released from prison.  (*Ibid*.)  The court nevertheless found the defendant " '*presently* . . . does represent a danger to society' " (*id*. at pp. 224, 227, italics added) and " 'for that reason' " declined to dismiss the enhancement (*id*. at pp. 224, 231, italics omitted).  The appellate court vacated the sentence and rejected the trial court's "singular focus on whether the defendant *currently* poses a danger."  (*Id*. at p. 228.)  Citing *People v. Williams* (2018) 19 Cal.App.5th 1057, *Gonzalez* explained that in deciding whether an enhancement's dismissal would endanger the public, sentencing courts should employ " 'a forward-looking inquiry' " that not only accounts for the defendant's current dangerousness, but also considers "the date on which the defendant would be released under the revised sentence, and, in the case of an indeterminate sentence, the safety valve that exists due to the review by the Board of Parole Hearings."  (*People v. Gonzalez, supra*, at p. 229.)

Here, the record does not indicate that the court interpreted section 1385 in the manner rejected in *Gonzalez*, i.e., limiting its analysis to Myron's current dangerousness.  " 'The trial court is not required to state reasons for declining to exercise its discretion under section 1385' [citations], and 'is presumed to have considered all of the relevant factors in the absence of an affirmative record to the contrary' [citation]."  (*People v. Brugman* (2021) 62 Cal.App.5th 608, 637.)  Accordingly, "[w]hen, as here, the record is silent as to" whether the court conducted a forward-thinking inquiry, "we presume that the trial court ' "correctly applied the law." ' [Citation.]"  (*Ibid*.)  Because the record does not affirmatively rebut this presumption, we reject Myron's argument based on *Gonzalez*.

Moreover, the record suggests the court did consider Myron's age. Aguilar opined that Myron remained a threat to public safety even though he was elderly, and the court cited Aguilar's reasoning in support of its ruling. Further, Myron's criminal history reflects a resistance to rehabilitation, a compulsive desire to prey on vulnerable female victims, a pattern of relying on sophisticated planning and trickery rather than physical strength to catch his unwary victims, and a use of devices such as a gun, bomb, or stun gun to control them. Thus, substantial evidence supports findings that neither additional years in prison nor his age—whether 72 years old, 80 years old (his age at the 2032 parole hearing), or older—will neutralize the threat he poses to public safety. Further, that the Board of Parole Hearings will conduct its own analysis in 2032 is relevant, but not dispositive. (See *People v. Gonzalez, supra*, 103 Cal.App.5th at p. 228, fn. 10 ["We do not suggest that a trial court is permitted to delegate its judgment regarding a defendant's future threat to public safety to the Board of Parole Hearings"].) Notably, Myron never argues that because of his age or because he has been or will be rehabilitated, he does not pose a danger. Indeed, he presented no rehabilitation evidence at all—his argument is based on little more than him aging due to the passage of time.

Because substantial evidence supports the trial court's determination that striking the enhancement would pose a threat to public safety, the court was not required to accord great weight to or even consider the mitigating factors Myron identifies on appeal. (*People v. Walker, supra*, 16 Cal.5th at p. 1029.) Thus, the trial court did not abuse its discretion in declining to strike the five-year enhancement.

11

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.

WEINGART, J.

We concur:

ROTHSCHILD, P. J.

BENDIX, J.